Noelle E. Dwarzski, WSBA #40041
Jeffrey G. Maxwell, WSBA #33503
BARLOW COUGHRAN
MORALES & JOSEPHSON, P.S.
1325 Fourth Ave Suite 910
Seattle, WA 98101
Telephone: (206) 224-9900
Facsimile: (206) 224-9820
E-mail: noelled@bcmjlaw.com
jeffreym@bcmjlaw.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| THE BOARD OF TRUSTEES FOR THE ALASKA CARPENTERS DEFINED CONTRIBUTION TRUST FUND, <br><br> Plaintiff, <br> v. <br><br> PRINCIPAL LIFE INSURANCE CO., an Iowa Company, <br><br> Defendant. | Case No. <br><br> COMPLAINT FOR FIDUCIARY BREACH (ERISA) AND BREACH OF CONTRACT |

## I. PARTIES

1.1    The Alaska Carpenters Defined Contribution Trust Fund (the Trust Fund) is the multiemployer joint labor-management trust fund that sponsors an individual account plan or defined contribution plan for the participating carpenters on whose behalf the contributions have been paid, and their beneficiaries. Plaintiff, Board of Trustees, is the plan's named fiduciary with the discretionary authority to administer the plan. The Trust Fund maintains its principal offices in the Municipality of Anchorage, Alaska and Mercer Island, King County, Washington.

1.2    Upon information and belief, Defendant Principal Life Insurance Co. (Principal) is an Iowa corporation with its principal place of business in Des Moines, Iowa.  At all relevant times,

COMPLAINT FOR FIDUCIARY BREACH (ERISA) AND
BREACH OF CONTRACT– 1

BARLOW COUGHRAN
MORALES & JOSEPHSON, P.S.
1325 FOURTH AVENUE, SUITE 910
SEATTLE, WA 98101
(206) 224-9900

4053 Transitio fi21fy0196

1   Principal Life Insurance Co. has conducted business within this District.

2                          II. **JURISDICTION AND VENUE**

3          2.1     The Board of Trustees of the Trust Fund brings this action pursuant to 29 U.S.C. §

4   1132(a)(2), which provides that a fiduciary of a plan may pursue a civil action on behalf of the

5   plan to remedy breaches of fiduciary duties and obtain monetary and appropriate equitable relief,

6   as set forth in 29 U.S.C. § 1109(a).

7          2.2      This case presents a federal question under ERISA, and therefore this Court has

8   subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332(a) and 29 U.S.C. § 1132(e)(1).

9          2.3     This Court has supplemental jurisdiction over the breach of contract claim pursuant

10  to 28 U.S.C. § 1367 as the breach of contract claim arises out of the same facts and circumstances

11  resulting in the breach of fiduciary duty claims.

12         2.4     This Court also has jurisdiction over the breach of contract claim pursuant to 28

13  U.S.C. §1332:

14                 a.      The Trust is domiciled in Washington State and has its principal place of

15                         business in King County, Washington;

16                 b.      Principal is an Iowa corporation with its principal place of business in Des

17                         Moines, Iowa; and,

18                 c.      The amount in controversy exceeds $75,000.

19         2.5     Because the Trust does not share a state of citizenship with Principal, and the

20  amount in controversy exceed $75,000, diversity jurisdiction is appropriate.

21         2.6     Venue is proper pursuant to 29 U.S.C. § 1132€(2) as this is the district where the

22  Trust Fund's plan is administered, and it is the district where the breach of fiduciary duty and

23  breach of contract occurred.

COMPLAINT FOR FIDUCIARY BREACH (ERISA) AND
BREACH OF CONTRACT– 2

4053 Transitio fi21fy0196

2.7     Venue is also appropriate in this district pursuant to 28 U.S.C. § 1391(b) because this is the district where the Trust Fund's plan is administered and where the actions giving rise to the breach of fiduciary duty and breach of contract occurred.

### III.  FACTS

A.      **The Trust Fund Agreement with Wells Fargo**

3.1     The Board of Trustees consists of ten individuals, five of whom are appointed by the Pacific Northwest Regional Council of Carpenters (the Union) and five of whom are appointed by the Associated General Contractors of Alaska, Inc. (the AGC).  Each member of the Board of Trustees is a volunteer and is not paid for his or her service to the Trust.

3.2     The Trust Fund does not have employees but contracts with a third-party administrator, Welfare and Pension Administration Services, Inc. (WPAS or the Administration Office), to perform its day-to-day operations including receipt of contributions, confirmation of contributions, enrollment and eligibility determinations, beneficiary record maintenance, financial accounting, and assistance with distributions.  The Trust Fund also retains independent legal counsel, plan auditor, investment consultant and investment managers.

3.3     On or about January 1, 2011, the Trust Fund hired Wells Fargo Bank, N.A. to provide certain recordkeeping and administrative services to the Trust Fund pursuant to a Master Services Agreement. These services include, but are not limited to, recordkeeping of participant accounts, asset custody, Trust Fund reporting, processing distributions, and distribution of certain participant notices.

3.4     Pursuant to the Master Services Agreement, Wells Fargo was paid an annual fee of $55.00 per participant account, which was billed to the Board of Trustees monthly. Additionally, the Master Services Agreement provided that any revenue sharing amounts paid to the plan by the

COMPLAINT FOR FIDUCIARY BREACH (ERISA) AND
BREACH OF CONTRACT– 3

BARLOW COUGHRAN
MORALES & JOSEPHSON, P.S.
1325 FOURTH AVENUE, SUITE 910
SEATTLE, WA 98101
(206) 224-9900

4053 Transitio fi21fy0196

1    plan's investment managers were to be deposited to a reserve account and were to be used to pay

2    other plan expenses pursuant to written direction to Wells Fargo.

3          3.5     Effective January 1, 2014, Wells Fargo and the Trust Fund amended the Master

4    Services Agreement to add an asset-based fee between 10 basis points and 35 basis points to cover

5    the costs of the Trust Fund's third-party administrator, attorney, auditor, investment consultant,

6    insurance, as well as other plan-related expenses. Similar to the revenue sharing amounts received,

7    the asset-based fee was to be paid to a reserve account and subsequently used to pay qualified plan

8    expenses pursuant to written direction to Wells Fargo.

9          3.6     Effective January 1, 2015, Wells Fargo and the Trust Fund amended the Master

10   Services Agreement to change its asset-based fee to a flat 20 basis point fee (inclusive of revenue

11   sharing) to level the plan fees being charged to plan participants. With this change, those plan

12   participants that invested in investment options that engaged in revenue sharing would contribute

13   the same percentage toward the plan's administrative expenses as those plan participants that

14   invested in investment options that did not engage in revenue sharing. The 2015 amendment

15   specifically directed Wells Fargo to create a separate reserve account for the revenue sharing

16   amounts and directed that the asset-based fee be paid to this reserve account. The amendment also

17   stated that all the fees and expenses described in the amendment "constitute amounts payable to

18   Wells Fargo Bank." Even though these fees were described as being payable to Wells Fargo, the

19   understanding and practice between the parties was that the asset-based fee was designated solely

20   to pay plan expenses, other than Wells Fargo's fee.

21         3.7     Effective January 1, 2020, Wells Fargo and the Trust Fund amended the Master

22   Services Agreement to reduce the asset-based fee to 15 basis points and reduced the Wells Fargo

23   per participant account annual fee to $50. All other relevant terms of the Master Service

COMPLAINT FOR FIDUCIARY BREACH (ERISA) AND
BREACH OF CONTRACT– 4

4053 Transitio fi21fy0196

1    Agreement, as amended, remained the same. Additionally, the practice regarding the allocation

2    and use of the asset-based fee remained unchanged.

3    **B.    Transition to Principal**

4         3.8    At the May 14, 2019 Board of Trustees meeting, Mark Thomas, the Trust Fund's

5    Client Relationship Manager for Wells Fargo, announced that defendant Principal had purchased

6    Wells Fargo's recordkeeping business and that Trust Fund would be transitioning to Principal at

7    some point in the future. Mr. Thomas informed the Trustees that Wells Fargo's fees would not be

8    changing as a result of the transition and his statement was recorded in the minutes of the meeting.

9         3.9    In February 2020, Mark Thomas distributed a client communication to the Trust

10   Fund dated February 24, 2020. The client communication requested the Trust Fund's consent to

11   assign its Wells Fargo agreement to Principal. The communication stated, "***Except as specifically***

12   ***stated otherwise in the Consent, all terms and conditions of the Agreements, including amounts***

13   ***charge for any services, will remain the same at the time of the transfer to Principal.***" (Emphasis

14   in the original.)

15        3.10    On or about May 7, 2021, Mark Thomas, contacted Frank Morales, the attorney for

16   the Trust Fund via email. In the email Mr. Thomas stated that Wells Fargo needed to "update the

17   Fee Schedule for AK Carpenters as we move to Principal." The email further stated that Wells

18   Fargo needed to change the administrative procedures to combine the expense accounts. The May

19   7, 2021 email, included an agreement that removed reference to the reserve account, but the

20   remaining language in the agreement was largely unchanged.

21        3.11    That same date, Mr. Thomas and Mr. Morales spoke via telephone. During the call,

22   Mr. Thomas informed Mr. Morales that Principal preferred to credit the revenue sharing amounts

23   directly back to participant accounts rather than use them to offset plan expenses. Mr. Thomas

COMPLAINT FOR FIDUCIARY BREACH (ERISA) AND
BREACH OF CONTRACT– 5

BARLOW COUGHRAN
MORALES & JOSEPHSON, P.S.
1325 FOURTH AVENUE, SUITE 910
SEATTLE, WA 98101
(206) 224-9900

4053 Transitio fi21fy0196

stated that if the revenue sharing amount were paid back to plan participants there was no need to reference the reserve account in the agreement. Mr. Thomas assured Mr. Morales that proposed fee changes consisted solely of change to the revenue sharing and that the fees payable to Wells Fargo and to Principal, by assignment, were not increasing.

3.12    On May 20, 2021, Mr. Morales sent the requested amendment to the fee schedule to the Board of Trustees Officers for signature.  In his email to the Trust Officers, Mr. Morales conveyed the information that Mr. Thomas told him, namely "This agreement is to clean-up some items in anticipation of the transition to Principal. The fees are not changing, other than that the rebates will no longer be used to pay for any administrative expenses."

3.13.   At no point did Mark Thomas inform the Trust Fund nor any of the Trust Fund's advisors that Wells Fargo was increasing its fees.

3.14    The Trust Fund went live on Principal's system on May 25, 2021. After going live, the Trust Fund immediately began experiencing significant problems. These problems (some of which are ongoing) included, but were not limited to:

    a.    Failure to timely deposit contributions into participant accounts;

    b.    Failure to correctly deposit contributions into participant accounts;

    c.    When contributions were corrected, failure to provide requested information regarding how the correction was made or funded;

    d.    Failure to attend the Board of Trustee quarterly meetings or provide any reporting to the Trust Fund at its quarterly meetings;

    e.    Failure to provide timely or substantive responses to the Trust's numerous questions and concerns;

    f.    Inclusion of numerous inaccurate entries in participant on-line accounts;

COMPLAINT FOR FIDUCIARY BREACH (ERISA) AND
BREACH OF CONTRACT– 6

4053 Transitio fi21fy0196

g.      Significant distribution delays and inaccuracies; and

h.      Failure to provide information necessary for the Trust Fund to complete its required annual audits.

3.15    After it became clear that the issues with the transition could have been avoided and appeared to be on-going, the Board of Trustees decided to issue a Request for Proposals for a new recordkeeper. On December 14, 2021, the Board of Trustees informed Principal that it would terminate services effective May 1, 2022.

3.16    In May 2022, the Trust Fund's new recordkeeper Milliman completed it transition from Principal. Upon completion of the transition, Milliman informed the Trust Fund that Principal had transferred to the Trust Fund's new custodial bank the Trust Fund's reserve account in the amount of $300,000. Milliman noted that the reserve account balance was significantly less than expected, as the reserve account balance was previously reported to be approximately $800,000.

3.17    The Trust Fund asked Principal to explain why the reserve account balance was lower than expected. On June 1, 2022, Principal explained that Principal's fees had not been paid since May 2021 and Principal "pulled fees owed at termination and collected all fees owed to date." Principal paid itself eleven months of fees without disclosing this to the Trust Fund and without invoicing the Trust Fund as required by the Master Services Agreement. Principal produced general invoices on June 6, 2022 and itemized invoices on August 12, 2022.

3.18    It was not until the Trust Fund received the August 12, 2022 invoices that the Trust Fund learned that Principal paid to itself not only the $50 per participant per account annual fee, but also the 15 basis point asset fee. Despite assurance that the fees would not change as a result of the transaction, the additional 15 basis point asset fee more than doubled the recordkeeping fee

COMPLAINT FOR FIDUCIARY BREACH (ERISA) AND
BREACH OF CONTRACT– 7

BARLOW COUGHRAN
MORALES & JOSEPHSON, P.S.
1325 FOURTH AVENUE, SUITE 910
SEATTLE, WA 98101
(206) 224-9900

4053 Transitio fi21fy0196

payable to Wells Fargo and resulted in an extraordinarily high recordkeeping for multiemployer plans of similar size.

## IV. CAUSES OF ACTION

### First Cause of Action
### (Breach of Fiduciary Duty)

4.1    The Trust Fund reallege each and every allegation contained in ¶¶3.1 – 3.18.

4.2    By paying itself from Trust Fund assets without direction from the Trust Fund, without invoicing the Trust Fund, and without informing the Trust Fund, Principal exercised discretionary control over Trust Fund assets and therefore was a plan fiduciary as that term is defined by ERISA 3(21)(A).

4.3    As a fiduciary to the plan, Principal had an obligation to discharge its duties with the care, skill, prudence and diligence, under the circumstances then prevailing, of a prudent person and to discharge its duties solely in the interests of the participants and beneficiaries for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the plan..

4.4    Principal violated its fiduciary obligations to the plan by, among other things, 1) representing to the Trust Fund that its fees would not increase as a result of the transition to Principal; 2) failing to inform the Trust Fund of its asserted significant fee increase; 3) failing to timely submit invoices showing an itemization of its fees; 4) paying itself from Trust Fund assets without prior to notice to the Board of Trustees; and 5) paying itself amounts in excess of what was agreed to or understood between Wells Fargo and the Trust Fund.

4.5    As a result of Principal's breach, the Trust Fund has been damaged in the amount of $291,007.20, plus pre- and post-judgment interest, attorney fees and costs.

COMPLAINT FOR FIDUCIARY BREACH (ERISA) AND
BREACH OF CONTRACT– 8

BARLOW COUGHRAN
MORALES & JOSEPHSON, P.S.
1325 FOURTH AVENUE, SUITE 910
SEATTLE, WA 98101
(206) 224-9900

4053 Transitio fi21fy0196

**Second Cause of Action**
**(Breach of Contract)**

4.6     The Trust Fund realleged each and every allegation contained in ¶¶3.1 – 4.5.

4.7     Pursuant to the Master Services Agreement, Principal was obligated do the following:

      a.     As contributions are made to the Plan, invest the amounts allocable under the Plan to each individual participant's account, consistent with the participant's investment elections, or as otherwise direct by the Board or in the Plan Investment Direction Exhibit;

      b.     Process withdrawals and distributions, including any required minimum distributions, properly requested and consented to by the participant, beneficiary, and alternate payee, if applicable, and approved by the Board;

      c.     Issue the Board administrative reports after the end of each Plan year, quarter or some other period as agreed to in writing between Principal and Board;

      d.     On a quarterly basis, send an invoice to the Trustee for fees and expenses due with respect to the Plan. The invoice will denote Plan fees to be "billed" that are payable by the Trustee and/or fees to be "deducted" that have been deducted from Plan assets.

4.8     Through its actions and inaction, Principal breached the Master Services Agreements by failing and refusing to perform its contractual obligations, including those obligations identified above, among others.

BARLOW COUGHRAN
MORALES & JOSEPHSON, P.S.
1325 FOURTH AVENUE, SUITE 910
SEATTLE, WA 98101
(206) 224-9900

4.9     The Trust Fund performed all of its obligations and duties required by the Master Services Agreement.

4.10    As a result of Principal's breach, the Trust Fund incurred damages in an amount to be proven at trial.

## V.  <u>REQUESTED RELIEF</u>

The Trust Fund respectfully request the Court grant the following relief:

A.      Judgment in favor of the Trust Fund against Principal in an amount of $291,007.20;

B.      Judgment in favor of the Trust Fund against Principal, in an amount to be determined at trial, representing the damages the Trust Fund incurred as a result of Principal's breach of the Master Services Agreement;

C.      Judgment in favor of the Trust Fund against Principal, in an amount to be determined at trial, representing accrued pre- and post-judgment interest owed by Principal;

D.      An award of attorney fees and costs as authorized under ERISA; and

E.      Any other such relief under federal law or as is just and equitable.

Dated: September 21, 2022.

s/  Noelle Dwarzski
Noelle Dwarzski, WSBA #40041

s/  Jeffrey G. Maxwell
Jeffrey G. Maxwell, WSBA #33503

BARLOW COUGHRAN MORALES & JOSEPHSON, P.S.
1325 Fourth Avenue, Suite 910
Seattle, Washington  98101
(206) 224-9900 (t)
email: noelled@bcmjlaw.com
jeffreym@bcmjlaw.com
Counsel for Plaintiff
Alaska Carpenters Defined Contribution Trust Fund

COMPLAINT FOR FIDUCIARY BREACH (ERISA) AND
BREACH OF CONTRACT– 10

BARLOW COUGHRAN
MORALES & JOSEPHSON, P.S.
1325 FOURTH AVENUE, SUITE 910
SEATTLE, WA 98101
(206) 224-9900

4053 Transitio fi21fy0196